**THE BUFFALO–SPRINGFIELD ROLL-ER COMPANY, Appellant,**

**v.**

**THE GALION IRON WORKS MANU-FACTURING COMPANY,**
Appellee.

No. 11967.

United States Court of Appeals,
Sixth Circuit.

Sept. 29, 1954.

Clarence B. Des Jardins, and Howard T. Keiser, Des Jardins, Robinson & Keiser, Cincinnati, Ohio, Arthur E. Dowell, Jr., Arthur E. Dowell, III, Washington, D. C., on the brief for appellant.

Harker H. Hittson, Columbus, Ohio, Lawrence B. Biebel, Marechal, Biebel, French & Bugg, Dayton, Ohio, on the brief for appellee.

Before SIMONS, Chief Judge, AL-LEN, Circuit Judge, and GOURLEY, District Judge.

SIMONS, Chief Judge.

In this patent action, injunction and damages were sought for infringement of Keeler patent No. 2,197,395, and a declaratory judgment that Greiner patents Nos. 2,359.519 and 2,442,563, owned by the appellant, are invalid. The appellant denying validity and infringement of Keeler, counterclaimed for infringement by the appellee of both Greiner patents and the Harrison and Greiner Design patent No. 138,539. The appellant at trial conceded the invalidity of Greiner No. 2,442,563 and it disappears from the appeal. In addition to questions of validity and infringement are contentions by the appellant that Keeler was not the original and first inventor, and that the appellee was guilty of laches in enforcing its rights.

The claims in suit of Keeler are 1, 4, 13, and 18. The District Court held each of them valid, 13 and 18 infringed by one appellant structure, each infringed by another, Greiner 563 invalid, Claims 1 and 3 of Greiner 519 invalid, Design patent 539 invalid, and gave judgment accordingly.

The important patent in the controversy is that of Keeler which is for a trench roller, granted April 16, 1940 upon an application filed January 21, 1937.

Of this patent, the inventor says that it relates to a trench roller particularly adapted to roll and compact material in a trench alongside a previously built road as a step in the widening of such road. His object was to provide a device of the type in which a heavy roller is mounted on one side, a pair of wheels on the other which ride upon the road surface, with the roller in the trench and means for maintaining the frame level in a transverse direction, by adjusting one of such wheels vertically while providing for steering by the other wheel, and with means for maintaining the roller free of adhering material by scraping the roller and washing it with a wetted mat. An alternate form described is one in which two wheels operate in the trench with only one upon the road surface and the claims respond fairly to these objectives. It is conceded that the combination disclosed by Keeler is one of old elements. It is claimed, however, that it is a new combination producing a result previously unknown to the art and so a pioneer patent.

While we give heed to the caution in Great Atlantic & Pacific Tea Co. v. Super Market Equipment Corporation, 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162, that "Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements", we do not derive therefrom a holding that combinations of old elements are never patentable. On the other hand, we do not accept the view sought to be drawn from an observation in Gillman v. Stern, 2 Cir., 114 F.2d 28, taken from its context that if an old article is physically changed, even slightly, to fit a new use it becomes itself a new machine and the statute is satisfied. That observation relates only to the statutory requirement of "novelty," for the court added that there is still left open the question "whether the discovery of the new use demands enough original thought to be deemed an invention." The patent law requires not only that the subject-matter

of a patent must possess novelty and utility but must also demonstrate an exercise of the inventive faculty. Seymour v. Ford Motor Co., 6 Cir., 44 F.2d 306. The Court of Appeals of the Ninth Circuit has recently in Kwikset Locks v. Hillgren, 9 Cir., 210 F.2d 483, 486, put it this way: "Moreover, a truly inventive combination must create what had not before existed or bring to light what lay hidden from vision in a way which can be distinguished from 'simple mechanical skill.' A mere advance in efficiency and utility is not enough to convert a non-inventive aggregation into a patentable combination."

This brings us to a consideration of the Keeler combination in order to ascertain, if we can, where invention resides over prior art, specific or generic. A number of elements are stressed which, though new in the combination, are clearly within routine mechanical skill and so do not rise to the dignity of invention. It is idle to argue that the incorporation of a heavy roller for compacting materials is beyond the skill of mechanics in the machine arts, that it is inventive to add or remove cleats from such roller, or to provide a mat or sprinkler to remove adhesive materials therefrom.

The appellee contends, however, that the trench roller art, as presently understood, began with Keeler, and if machines are found wherein the Keeler combination is disclosed, they are foreign to this inquiry, unless embodied in a device for compacting materials in a trench by a roller. There is no analogy, it says, between trench rollers and machines in "a different field of commercial endeavor."

Basically, the Keeler machine is a three-wheeled motor vehicle with a frame supporting a power plant and driver seat, with one or two of its wheels (or rollers) designed to travel on the roadway and a heavy roller (or wheel) to travel in the trench. Power is transmitted from the power plant by more or less conventional gears and means to vary the elevation of one land wheel, so as to keep the struc-

ture level, notwithstanding variations of grade, either in the trench or on the road. There is a clutch lever, brake lever, gearshift and reversing mechanism.

Most important of what is here advanced as prior art by the challenging appellant is Hartsough U. S. patent No. 1,128,246, issued February 9, 1915, expired 1932. It shows a three wheel motor vehicle having a frame on which a driver's seat and power plant are mounted. The frame is supported by three wheels, a large diameter wide-rimmed driven wheel, a smaller diameter steerable wheel aligned with it and a vertically adjustable land wheel. The driven wheel and the steerable wheel are upon the same side of the frame, one tracking the other. The Hartsough patent, however, is for a tractor and not a trench roller. It is designed to draw a plow, but it discloses, except for adaptations that do not appear to be inventive, the Keeler organization. Agriculture is, of course, a commercial endeavor differing materially from the widening of hard surfaced roads. We are considering, however, a machine and not a process, and specifically a self-propelled device for operations much earlier performed by hand, or by extremely crude processes. That there were problems common to all self-propelled machines is beyond controversy, and teachings in the art of organizing them for operations in one phase of activity have ever been suggestive of machines for other purposes. The truck followed the passenger car and many agricultural implements evolved from the truck. Ever since it was found that stationary gasoline engines could be redesigned for purposes of propulsion, great enterprises have been developed in which lightweight engines of great power have revolutionized activities of men in almost every field of endeavor.

It is settled law beyond the need of citation that the adaptation of a machine for a new use does not entitle one to a patent if the idea of the new use is suggested by analogous art and invention may not be perceived in the adaptation. The generic art here involved is the motor driven vehicle art. In an age of specialization it cannot be true that every differentiation from known art closes the door to its teachings and, so, entitles the adapter to a monopoly on the ground that what he has done is a new thing merely because the old instrumentality has been used for a different purpose.

Long ago, we came to the view in Dunham Co. v. Cobb, 6 Cir., 19 F.2d 328, that where a specialized art is merely the offspring of a more generic art it is entitled, by right of descent, to the previously disclosed useful characteristic of the ancestral estate, and we have followed and applied this concept in numerous cases, including Page Steel & Wire Co. v. Smith Brothers Hardware Co., 6 Cir., 64 F.2d 512, wherein an extensible wire-mesh road guard was but a new use for wire fencing, in Lempco Products, Inc. v. Simmons, 6 Cir., 140 F.2d 58, where a method of brushing expanded metal was but a new use of an old process, in Perfect Circle Co. v. Hastings Manufacturing Co., 6 Cir., 88 F.2d 813, wherein we found the steam engine art analogous in respect to the cooperation of piston ring and cylinder in the internal combustion engine, and in comparable relations between basic arts and evolution therefrom in United States Gypsum Co. v. Consolidated Expanded Metal Co., 6 Cir., 130 F.2d 888, Mathews Conveyor Co. v. Palmer Bee Co., 6 Cir., 135 F.2d 73, among other cases. We were neither pioneers nor alone in the application of this rule. In the leading case involving motor vehicles, Columbia Motor Car Company v. C. A. Duerr & Co., 2 Cir., 184 F. 893, adjudicating the Selden patent, the court, in determining validity, considered as prior art the stationary gas engine and all departures therefrom involving propulsion, from boats to motor buses and from railroad locomotives to overhead cranes. The Supreme Court in Paramount Publix Corporation v. American Tri-Ergon Corporation, 294 U.S. 464, 465, 55 S.Ct. 449, 79 L.Ed. 997, had no difficulty in recognizing that sound film patents but applied the skill and wisdom

of photography. See also Cuno Engineering Corporation v. Automatic Devices Corporation, 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58. The appellee lays great stress upon our decision in Lakewood Engineering Co. v. Walker, 6 Cir., 23 F. 2d 623. There, no possible relationship existed between two arts to indicate that the one was an effective suggestion of either the means used or the result accomplished. The court, as then constituted, recognized that the question of invention was close and we later observed in Page Steel & Wire Company v. Smith Brothers, supra, that the Lakewood Engineering was a borderline case beyond which we had no occasion to go.

We have already dismissed some of the elements of Keeler as failing to show invention in his combination, but it is urged that Hartsough's reversing mechanism is inoperative. There is no evidence that such is the case and the presumption that resides in the patent grant, unless overthrown, is that in all of its aspects it was a useful machine. Even so, it is difficult to conceive, in the rapid evolution of the motor vehicle art, that there was any unusual difficulty, as late as 1937, in providing a reversing mechanism for the Keeler device and we fail to find in the record any demonstration that Keeler provided a reversing mechanism that was novel or beyond the skill of the machine arts. That Keeler drew his claims with the introductory phrase "in a road roller" is of slight, if any, significance. Road rollers were old long before Keeler and the phrase "steam roller" had enriched the local idiom in a multitude of connotations. If originally there was any problem in providing a roller that could be kept level on grades of differing levels, that was long ago solved by the parent art, if not indeed disclosed by Keeler himself in his earlier patent No. 1,631,271 for a *roller tractor* wherein one roller might be depressed and raised, permitting the packing of dirt in surface ditches.

 We conclude that there is no inventive novelty in the claims in suit of Keeler; that they are void for want of

invention over analogous prior art. Other questions raised by the appellant therefore do not require extended discussion. We are content to accept the findings of the District Judge with respect to them, being unable to perceive that they are clearly erroneous. It is, undoubtedly, true that Sparks, a former employee of the Ohio State Highway Department, had some more or less vague notion of a trench roller prior to 1936 but the record fails to establish that Sparks had made an invention, or that he had communicated his ideas to Keeler. A drawing found in the Sparks' papers, long after his death, bears some resemblance to the Keeler drawings but no specifications or description accompany it and it fails to indicate a reduction to practice. It is true that the appellee delayed for many years bringing suit on the Keeler patent after notice of infringement, but in view of the appellant abandoning manufacture of the alleged infringing device during the War and its failure to notify the appellee of its resumption thereafter would seem to bar this defense. Infringement seems to be clear, if the claims are valid. So thought the District Judge, and we are unable to say that he was wrong.

 The claims in suit of Greiner patent No. 2,359,519 seem clearly invalid for want of invention. The positioning of the final driving gear, whether on the right or left side of the machine, is merely a matter of choice by the designer, with no quality of invention recognizable therein. The Harrison and Greiner Design patent No. 138,539 is also devoid of invention. We have held that "It was certainly not the intent of the law to grant monopoly to purely conventional design which is in itself little more than a necessary response to the purpose of the article designed." Applied Arts Corporation v. Grand Rapids Metalcraft Corporation, 6 Cir., 67 F.2d 428, 430, and that "to hold that general configuration made necessary by function must give to a patented design such breadth as to include everything of similar configuration, would be to subvert the pur-

pose of the law, which is to promote the decorative arts rather than to effectuate it." See also Standard Computing Scale Co. v. Detroit Automatic Scale Co., 6 Cir., 265 F. 281.

The judgment will be amended by striking therefrom the provisions which adjudicate as valid the claims in suit of Keeler, which direct reference to a special master for the purpose of ascertaining damages and which provide for a perpetual injunction.

As so amended, the judgment is affirmed without costs to either party.