**Vincent J. MENIER, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 24704.**

United States Court of Appeals Fifth Circuit.

Dec. 5, 1968.

---

Jay Sam Levey, San Antonio, Tex., for appellant.

Andrew L. Jefferson, Jr., Reece L. Harrison, Jr., Asst. U. S. Attys., San Antonio, for appellee.

Before TUTTLE, GEWIN and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

The appellant was denied relief under Fed.R.Civ.P. 60(b) from a judgment entered against him by default in favor of the United States. The decision of the district court is reversed.

In August, 1962 the government sued appellant as guarantor of a note,[1] alleging that he and the maker were notoriously insolvent. It claimed priority as to assets mortgaged as security and other assets as well of both appellant and the maker, and for the purpose of establishing priorities to reach assets the government named as additional defendants a landlord claiming a lien and a supplier claiming to own certain assets as a conditional vendor. Judgment was prayed against appellant for the unpaid principal balance on the note of $15,698.91, with interest.

Appellant was served August 23, 1962. The same day an involuntary petition in bankruptcy was filed against him and the maker. Because of his financial condition, and because he then had no defense, appellant employed no counsel in the suit on the note and guaranty. Neither he nor the maker filed an answer, and on September 14 the clerk noted on the docket that they were in default. During September, an attorney representing appellant in the bankruptcy proceeding notified the United States Attorney that appellant had no defense to the suit and default judgment could be entered against him. The judgment was not entered until nine months later. Because of intervening events, and the government's participation therein, we hold appellant is entitled to have it set aside.

1. The maker was a corporate hardware store of which appellant was president.

In November, 1962 pre-trial of the suit was had, with no one appearing for appellant or maker, and the defined issues were confined to the contest between the government and the other defendants over priorities. Trial took place in late November, limited to the dispute over priorities. Appellant testified under subpoena for the government. At the government's request he furnished a written statement that the store was insolvent and willing to be adjudged bankrupt, and it was introduced as evidence, and testimony was adduced by the government showing appellant's insolvency. The court took the case under advisement and requested briefs.

On January 2, 1963 Menier, and presumably the store also, were adjudicated bankrupt. Appellant was discharged in bankruptcy in March. In April the government filed a claim in the bankruptcy case for $15,698.91, the principal balance on the note, claiming as a priority creditor, and the claim was approved and allowed as a priority claim.

On June 10 a decision was handed down in the contest over priorities. On June 18 the government, pursuant to Rule 55, Fed.R.Civ.P., filed an affidavit of the Assistant United States Attorney praying for judgment by default against the maker and appellant for the unpaid balance originally sued for, with interest.[2] The same day judgment was entered by the clerk under Rule 55(b)(1) for $15,698.91, with interest.

No notice was given to appellant of the entry of judgment. He first learned in December, 1965 that it had been entered subsequent to his discharge in bankruptcy. Promptly he retained counsel who on December 29, 1965 filed a motion to set aside the judgment, alleging mistake, inadvertence, surprise or excusable neglect, grounds which under clause (1) of Rule 60(b) must be filed within one year of judgment. The government filed a written motion in opposition in two aspects—that if appellant desired to claim the discharge in bankruptcy as a defense to the suit on the guaranty he was required to plead it as an affirmative defense and did not do so, and, second, that the motion was filed too late. Appellant's statements of fact in his motion were not controverted. The motion was heard almost a year after filed, in December, 1966, without testimony,[3] and was denied not on the ground it was late filed but on the basis appellant had not proved that the long delay was based on excusable neglect within the meaning of Rule 60(b). The court said.

At no time after the bankruptcy proceedings were instituted against him in August, 1962, did the Defendant move the Court to suspend the proceedings as to the personal claim made against him by the Plaintiff. At no time after receiving his discharge in bankruptcy and while these proceedings in the present case were still pending did he by Motion or other-

**2.** The affidavit recited that the assets of the store had been sold pursuant to an attachment secured in the case, and the proceeds were in the hands of the marshal and after deduction of his costs and court costs and storage charges the balance would be applied against the judgment to be entered. While it is not necessary to develop the point, this state of affairs makes it at the least doubtful that entry of judgment could be made by the clerk or for the entire principal balance, since part of the collateral for the note already had been realized upon. Ordinarily forthwith upon foreclosure sale the debt is partially satisfied to the extent of the proceeds. Under Rule 55(b)(1)

judgment for a sum certain can be entered by the clerk against a defaulted defendant without notice. If the sum is not certain Rule 55(b)(2) requires the judgment be entered by the court, and if it is necessary to take an account or determine damages the court may take evidence or order a reference. Several months later after deduction of costs and charges of $499.05 a net amount of $4,-541.67 obtained from the sale was ordered by the court to be paid to the government.

**3.** See discussion at 7 Moore, Federal Practice, ¶60.28[3], at 329–30 (2d ed. 1966), of procedures for hearing Rule 60(b) motions.

wise direct the attention of the Court to the matter of his bankruptcy. On December 29th, 1965, nearly two and one-half years after entering of the Judgment, the Defendant for the first time directed the attention of the Court to the matter of his bankruptcy and asked relief from the Court.

Appellant then filed a motion for rehearing, giving a more complete factual history and asking for relief on the ground of injustice and inequity in allowing the judgment to stand. It was denied without further hearing and without statement of reasons. This second motion invoked the power of the court under sub-section (6), which is not subject to the one-year rule. "In simple English, the language of the 'other reason' clause [sub-section (6)], for all reasons except the five particularly specified, vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." Klapprott v. United States, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266 (1948). The broad language of clause (6) gives the court ample power to vacate judgments whenever such action is appropriate to accomplish justice. L. M. Leathers' Sons v. Goldman, 252 F.2d 188 (6th Cir. 1958); 3 Barron & Holtzoff, Federal Practice & Procedure, § 1329 (Wright ed. 1958.) "[C]lause (6) is a grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the preceding clauses." 7 Moore, supra, ¶ 60.27 [3], at 308. This court has recognized and implemented wide equitable force and effect for Rule 60 (b) (6). Bros Inc. v. W. E. Grace Mfg. Co., 320 F.2d 594 (5th Cir. 1963); Laguna Royalty Co. v. Marsh, 350 F.2d 817 (5th Cir. 1965).

As in *Klapprott,* the uncontested contentions of the appellant are far more than mere allegations of excusable neglect by the movant. They show a combination of many factors—inaction by the government in not promptly obtaining a default judgment, which if promptly entered presumably would have been discharged in bankruptcy; at the same time action by the government in seeking and securing status as a priority claimant in bankruptcy on the same claim, presumptively a benefit; unusual delay by the court in deciding the contest over priorities; final action by the government in securing judgment, without notice to appellant and after his intervening discharge which it knew was at least presumptively a defense against entry of judgment, pursuant to consent given at a time that such defense was non-existent. Added to this are the facts that appellant was without counsel in the note suit and known to be hopelessly insolvent.

While recognizing the desirability of finality of judgments, we conclude that these particular circumstances draw on the reservoir of equitable power to accomplish justice, represented by Rule 60(b) (6), so as to entitle appellant to have the default judgment set aside. In so concluding we ascribe no improper motive to the government. Sufficiency of the defense of discharge is not before us. All we do is restore the status existent before entry of judgment.

The only reasons stated for denial of relief were directed at appellant's conduct. But the 1948 amendment to Rule 60 removed the limitation that the wrong or default affording a basis for relief must be that of the moving party. Now the mistake or neglect can be that of others. 3 Barron & Holtzoff, supra, § 1325, at 403.

Rule 60(b) relief has been granted to a defendant based on his dealings with representatives of the government. In *Klapprott* when the default in a federal case (a denaturalization proceeding) was taken defendant was ill in jail on a federal criminal charge, and though he had appointive counsel in the criminal case was without counsel in the civil case and

had no funds to employ counsel.[4] See also: Block v. Thousandfriend, 170 F.2d 428 (2d Cir. 1948); Fleming v. Huebsch Laundry Corp., 159 F.2d 581 (7th Cir. 1947); Pierce Oil Corp. v. United States, 9 F.R.D. 619 (E.D.Va.1949); Woods v. Severson, 9 F.R.D. 84 (D.C.Neb.1948).

■ In reaching our decision we bear in mind the purposes of the Bankruptcy Act to relieve the honest debtor and permit him to start afresh, matters of public as well as private interest. Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230, 93 A.L.R. 195 (1934). This policy was effectuated in National Bank of Eastern Arkansas v. General Mills, Inc., 283 F.2d 574 (8th Cir. 1960). The defendant defaulted and failed to answer. But he appeared as a witness in the case (in the same federal court that had discharged him in bankruptcy), on the trial of issues concerning whether mortgages he had given were to secure antecedent debts. He testified to his adjudication and discharge as bankrupt. The affirmative defense was not pleaded, so the court had power to grant a default judgment against him on notes secured by the mortgages, but declined to do so.

Reversed and remanded for proceedings not inconsistent with this opinion.

TUTTLE, Circuit Judge (specially concurring).

I concur in the result. I do so, however, not on the ground that the United States should be faulted for anything done by it during the course of the proceedings, as suggested by the opinion of the court, but rather on the authority of National Bank of Eastern Arkansas v. General Mills, Inc. (8 Cir. 1960), 283 F.2d 574. Since the original suit on the note was pending in the same court that had jurisdiction of the bankruptcy matter, and since the obvious and natural effect of the discharge in bankruptcy would be to discharge this very debt, it appears to me that the court can give effect to the discharge, even though not formally pleaded.

GEWIN, Circuit Judge (dissenting):

With apparent zeal to grant equitable relief to the appellant in this case it appears that the majority has overlooked the rights of the appellee; and the appellee has done nothing but conduct this litigation in a fair, just and upright manner according to the rules. I cannot agree with the reasoning of the majority opinion or with the result reached. There is nothing in the record to show that the district court which denied the relief sought failed to give proper consideration to all factors involved, or that there was any abuse of discretion or error of judgment. I do not approve of the notion that this court, viewing the case on appeal, is better able to render a proper and just judgment than was the district court, absent some error or abuse of discretion by the trial judge. There is no such showing here.

Rule 60(b) (6) F.R.Civ.P. gives the courts ample power to grant relief from judgments whenever such action is shown to be appropriate to accomplish justice. But the rule was not intended to relieve a party from calculated and deliberate choices freely made. No snap judgment by default is involved here. The appellant is not shown to have been laboring under any disability or unusual conditions. Suit was filed on August 22, 1962. Default judgment was not entered until June 18, 1963. Over two and one-half years later, and not before, the appellant called the matter to the attention of the trial court. The court ruled, properly in my opinion, that the

---

4. Compare Ackermann v. United States, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950), in which movants charged misleading advice was given them by a government official. But they were represented by counsel, the advice came after a trial on the merits at which they had suffered an adverse judgment from which they did not appeal, and their claim of financial inability to appeal was insufficiently established.

**250**

appellant had shown no reason why the judgment should be cancelled and offered nothing to the court to support the claim of excusable neglect.

Judgments import verity. Finality of judgments is vital, important and necessary. A judgment should not be disturbed for light or transient reasons. Trial courts should not be reversed unless error is shown. Sympathy for a litigant is not a proper basis for reversal. There is no showing as to why the appellant failed to assert his discharge in bankruptcy as a defense. To the contrary the record indicates that he invited the judgment by default.

Considering all facts involved it is my view that the judgment should be affirmed. Ackermann v. United States, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950).